IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GERALD SZAKAL,　　　　　　　　　)
　　　Petitioner,　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　v.　　　　　　　　　　　　)　　2:13-cv-1127
BRIAN COLEMAN et al.,　　　　　　)
　　　Respondents.

REPORT and RECOMMENDATION

I. Recommendation:

It is respectfully recommended that the petition of Gerald Szakal for a writ of habeas corpus be dismissed, and because reasonable jurists could not conclude that a basis for appeal exists, that a certificate of appealability be denied.

II. Report:

Gerald Szakal, by his counsel, has presented a petition for writ of habeas corpus. Szakal is presently serving two concurrent life sentences without the possibility of parole and a consecutive 20 to 40 year sentence following his conviction of two counts of second-degree murder, two counts of robbery, one count of theft by unlawful taking, one count of receiving stolen property and two counts of conspiracy to commit robbery at No. 724 Criminal Sessions 2008, in the Court of Common Pleas of Washington County, Pennsylvania.[1] This sentence was imposed on October 28, 2009. Commonwealth v. Szakal, 50 A.3d 210, 214 (Pa.Super.2012).

　　An appeal was taken to the Superior Court in which the issues presented were:

　　1. Is [Appellant] … entitled to meaningful appellate review of his issues?

　　2. Can an [a]ppellant be afforded meaningful review of his issues if the trial record has been substantially and materially altered?

　　3. Is Appellant … entitled to a record/trial transcript which has not been materially altered upon which to brief/advance his issues?

---

[1] See: Petition at p.3.

1

4. Does Appellant … have the constitutional right under both the Constitution of the United States and the Pennsylvania Constitution to the effective assistance of counsel on direct appeal?

5. Can the undersigned render effective assistance of counsel with a record that has been materially altered with respect to the issues that must be advanced?

6. Is [Appellant] entitled to a new trial if the trial transcript has been intentionally altered for the purpose of preventing Appellant from advancing his issues and having them decided on their merits?

7. Is [Appellant] entitled pursuant to Rule of Appellate Procedure 1926 to copies of the audio recording of the trial transcript, copies of the floppy disk of the trial transcript as well as any other format that exists?

8. Should [Appellant] be entitled to submit a supplemental Brief upon receipt of an unaltered copy of the trial record whether it be in the form of an audio recording, floppy disk or other format?

9. Did the trial [c]ourt err in this death penalty case in denying [Appellant's] motion for a mistrial when a [potential] juror, during jury selection, stated in the presence of the entire jury pool: "This guy's fucking guilty" and jurors denied that they heard this outburst when specifically questioned by the [c]ourt?

10. Did the trial [c]ourt err by denying Appellant's motion for a mistrial when a Government witness spoke directly to the jurors during a trial recess and stated to them:"[Appellant] told me everything he did in the [Secured Housing Unit of the Washington County Jail]. He told me it all. [Appellant] had [the victim] down and he was kicking her."?

11. Did the trial [c]ourt err by denying Appellant's motion for a mistrial when the prosecutor stated in his closing argument that [Appellant] could have called certain witnesses to testify and failed to and likewise could have conducted tests on certain forensic evidence and failed to, which impermissibly shifted the burden of proof to [Appellant]?

12. Did the trial [c]ourt err in giving an incomplete and misleading jury instruction regarding unanimity of the verdict in response to a question from jurors during deliberations?

13. Did the cumulative effect of

   (i) a juror outburst during jury selection wherein a juror stated in the presence of the entire jury pool that "[Appellant] was fucking guilty", AND

(ii) a Commonwealth witness speaking to jurors at a trial recess and telling them that [Appellant] was guilty; AND

(iii) statements during the prosecution's closing argument that [Appellant] could have called certain witnesses to testify in his defense but did not and could have tested certain pieces of forensic evidence but did not; AND

(iv) an erroneous, misleading and coercive jury instruction regarding juror unanimity

deny the Appellant a fair trial?

14. Did the trial [c]ourt err in denying Appellant's suppression motion regarding his statement and photographs, which were taken in violation of the six hour rule, his right to a prompt preliminary arraignment and because he was unlawfully in custody of the Pennsylvania State Police?

15. Did the trial [c]ourt err in denying [Appellant] the right to call a False Confession Expert which was the heart of [Appellant's] case and would have assisted the trier of fact?

50 A.3d at 214-215.

On August 3, 2012, the judgment of sentence was affirmed, 50 A.3d at 229. Leave to appeal to the Pennsylvania Supreme Court was not sought.[2] The instant petition was filed on August 2, 2013, and thus it is timely. 28 U.S.C. § 2244(d). In his federal petition Szakal contends he is entitled to relief on the following grounds:

1. The trial judge directed the stenographer to tamper with the transcript after the trial to remove/alter a key defense objection and two mistrial motions. This is outrageous, and violated the Petitioner's fundamental due process right to have his appeal issues decided on their merits before the Superior Court of Pennsylvania. The tampering with the trial transcripts warrants a reversal of Petitioner's convictions and the grant of a new trial.

2. The trial judge gave a coercive, misleading and erroneous jury instruction to the jury in response to their question during deliberations: "Do we have to have a unanimous decision in all charges put in front of us["]? The trial judge responded with the word "Yes." This answer was incomplete, misstated the law on unanimity, was coercive and constituted reversible error.

3. A government witness engaged in highly prejudicial misconduct by talking directly to jurors at a recess. The witness told the jury that the Petitioner killed

---
[2] See: Petition at p.4 ¶ 5.

3

the victims and how and why he supposedly did so. The trial judge abused her discretion in denying the defense's mistrial Motion regarding this misconduct.

4. Juror misconduct during jury selection tainted the entire pool and denied Petitioner's his 6th Amendment right to an impartial jury. The trial judge abused her discretion in denying Petitioner's mistrial Motion regarding this outburst.

5. The Prosecutor impermissibly shifted the burden of proof to the Petitioner in closing argument. He argued that the Defense could have called certain witnesses to testify. This was fundamentally improper. Although the trial judge gave a curative instruction, it failed to cure the prejudice. Specifically, a juror contacted the undersigned the morning after the verdict and informed that the jury, during deliberations, specifically referenced the Petitioner's failure to call these witnesses as a basis to convict him. This established that the judge's curative instruction did not cure the prejudice of the prosecutor's improper arguments. Accordingly, the trial judge abused her discretion in denying the defense's mistrial Motion. His conviction should be reversed, and he be granted a new trial.

6. Juror misconduct during deliberations denied Petitioner a fair trial.

7. The cumulative effect of all of the prejudicial events detailed in claims #2-6 denied the Petitioner a fair trial.[3]

The factual background to this prosecution is set forth in the August 3, 2012 Opinion of the Superior Court:

> Appellant was arrested on March 9, 2008, and charged with capital murder, robbery, and other related crimes in connection with the March 5, 2008, shooting deaths of Howard and Nancy Springer (the Springers) at their home in Carroll Township, Washington County. The Commonwealth theorized that Appellant, acting alone, robbed and murdered the Springers to cover up a previous theft.[3]
>
>> fn3. Prior to the deaths of the Springers, Appellant had stolen jewelry from his mother, which he later sold at the Springers' home-based precious metals business. The Commonwealth alleged that this incident formed the basis of the plan to rob and murder the Springers.
>
> The Commonwealth further alleged that co-defendants Justin Welch, Gregory Carpenter, and Tecko Tartt, collectively "the co-defendants," assisted Appellant in his plan to rob and kill the Springers and were subsequently paid for their efforts out of the proceeds from the robbery.
> Following a jury trial, at which the co-defendants[4] testified for the Commonwealth and Appellant took the stand on his own behalf, Appellant was

---
[3] See: Petition.

4

> convicted of two counts of murder in the second degree, two counts of robbery, one count of theft by unlawful taking, one count of receiving stolen property, and two counts of conspiracy.
>
> > fn4. Prior to Appellant's trial in this matter, all co-defendants pled guilty to various offenses, related to their involvement in this incident.

50 A.3d at 213-214.

It is provided in 28 U.S.C. §2254(b) that:

> An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

This statute represents a codification of the well-established concept which requires that before a federal court will review any allegations raised by a state prisoner, those allegations must first be presented to that state's highest court for consideration. Preiser v. Rodriguez, 411 U.S. 475 (1973); Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484 (1973); Doctor v. Walters, 96 F.3d 675 (3d Cir. 1996).

It is only when a petitioner has demonstrated that the available corrective process would be ineffective or futile that the exhaustion requirement will not be imposed. Preiser v. Rodriguez, supra.; Walker v. Vaughn, 53 F.3d 609 (3d Cir. 1995).

If it appears that there are available state court remedies, the court must determine whether a procedural default has occurred. If a procedural default has occurred, the court must determine whether cause or prejudice exists for the default, or whether a fundamental miscarriage of justice would result from a failure to consider the claims. Carter v. Vaughn, 62 F.3d 591 (3d Cir. 1995).

In construing § 2254(d)(1), the Court in Williams v. Taylor, 529 U.S. 362, 412-413 (2000) stated:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.
> We must thus decide whether the state supreme court's "adjudication of the claim ... resulted in a decision that was *contrary to*, or involved *an unreasonable application* of, clearly established Federal law, as determined by the Supreme Court of the United States...
>
> A state court adjudication is "contrary to" Supreme Court precedent if it results from the application of "a rule that contradicts the governing law set forth" by the Supreme Court or is inconsistent with Supreme Court decision in a case involving "materially indistinguishable" facts ... "A state court decision fails the 'unreasonable application' prong only 'if the court identifies the correct governing rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular case or if the state court either unreasonably extends a legal principle from the Supreme court's precedent to a new context where it should not apply or unreasonably refuses to extend the principle to a new context where it should apply...(citations omitted).

That is, the state court determination must be objectively unreasonable. <u>Renico v. Lett</u>, 130 S.Ct. 1855 (2010). Respondents concede that the petitioner has exhausted the available state court remedies on the issues which he seeks to raise here.[4]

As observed above, the writ may issue only if one of the following two conditions is satisfied - the state-court adjudication resulted in a decision that (1) was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States, or (2) involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States.[5]

---

[4] See: Answer at p.2 ¶2.
[5] Counsel for both the petitioner and the Commonwealth have failed to recognize that the instant petition is a *federal* petition the grant or denial of which depends on federal law as construed by the Supreme Court of the United States, and is not dependent on Pennsylvania law. For this reason, their briefs are totally deficient in that they do not cite any applicable federal law. However, despite this deficiency, rather than require that the petition and response

6

Petitioner's first contention is that the trial judge directed the stenographer to tamper with the transcript thus preventing meaningful appellate review. In reviewing this claim, the Superior Court wrote,

> We are admittedly troubled by counsel's accusations that the trial court somehow was responsible for altering the notes of testimony. Appellant's limited proof, that is, his own recollection and his representation that the court stenographer made a comment suggesting that counsel request the audio recordings of trial, are hardly sufficient to justify this type of claim, particularly in a case where the relevant audio recordings **were** provided *sua sponte*. Inexplicably, in a case where counsel repeatedly asserts violations of his client's rights, he has managed simultaneously and repeatedly to ignore the proper procedure to address those claims…
>
> Furthermore, because a transcript has been provided, and because counsel's claim affects the placement of objections and motions, as opposed to material alterations to or elimination of any witness testimony, we are not precluded from conducting a meaningful review of Appellant's issues on appeal.

50 A.3d 217.

Thus, as the Superior Court concluded, other than his bald allegations, there is nothing in the record to support the petitioner's argument that the transcript was tampered with in any critical manner. Additionally, the Superior Court observed that the allegations if credited did not involve any alteration or elimination of substantive testimony but rather the placement of certain materials in the record. These findings by the state courts are entitled to a presumption of correctness. 28 U.S.C. §2254(e)(1) and clearly demonstrate that this allegation does not provide a basis for relief here.

Petitioner's next allegation is that the trial court erred when it responded to a question from the jury inquiring "do we have to have a unanimous decision in all charges put in front of us? What happens if we do not have this?" (TT. 9/30/09 p.21). After initially responding affirmatively (TT.9/30/09 p.21), the court reconvened the jury and clarified that:

> After I thought about it [the court's response], I might have caused you some confusion because I want to further explain to you that your decision on every verdict must be unanimous, as I already told you. But it can be unanimous as not guilty or guilt on every charge, and that is what I meant when I sent it back and said yes, you must continue to do that because your duty here is to reach a fair and just verdict after considering all of the evidence and determining whether or not

---

be amended to reflect applicable federal law, the claims will be addressed as though they were properly raised and responded to.

the Commonwealth has proven the defendant guilty beyond a reasonable doubt on
each and every element of each crime that we gave you verdict slips for…
I wanted to make sure you understood that every one of those verdict slips you
have, you have to determine unanimously … whether the defendant is not guilty
or guilty on each charge…(TT. 10/1/09 p.3-4).

In reviewing a challenge to jury instructions, the latter must be viewed as a whole. Estelle v. McGuire, 502 U.S. 62 (1991). While perhaps not the model of clarity, it is apparent that through her clarification, the trial court instructed the jury that its verdict on each charge had to be unanimous but that the verdicts on the individual charges could vary one from the other. This was clearly a proper statement of the law. In addition, in the context of the entire jury instructions, no basis for granting relief appears. For this reason, the challenge to the supplemental jury instruction is of no merit here.

Petitioner next contends that he was denied a trial by a fair and impartial jury as a result of one of the prosecution witnesses talking to the jurors during recess. Specifically,

> On the third day of trial, during the lunch recess, court staff informed the trial court that Commonwealth witness Dennis Hawkins (Hawkins) had made statements to the jury on the steps of the courthouse. Hawkins, who had taken the stand that morning, testified that he was housed in the Special Housing Unit (SHU) of the Washington County jail with Appellant, and while incarcerated Appellant confessed to Hawkins that he had killed the victims. During the court lunch break, Hawkins approached Juror No. 715 and stated, "[Appellant] told me everything he did in the SHU. He told me it all. He had [the victim] down and he was kicking her" … Appellant essentially argues that this comment was so prejudicial that the only way to remedy the situation was to declare a mistrial…
>
> Here, the trial court conducted a colloquy of the jury to determine what, if anything, each juror heard and whether the incident affected his or her ability to be fair and impartial. The colloquy revealed that only Juror No. 715 heard Hawkins' comments. Each juror, including No. 715, indicated that his or her impartiality was not affected by the outburst. The trial court found the jury's assurances credible… Moreover, as the trial court notes, "the comments about the [SHU] and [the victim] being kicked only referred to testimonial information that the jury had already heard" … Under these circumstances, Appellant has failed to prove that he was prejudiced and we cannot conclude that the trial court abused its discretion in denying Appellant's motion for a mistrial.

50 A.2d at pp.219-220.

Prior to the lunch recess on September 23, 2009, Hawkins had testified that while incarcerated, the petitioner had related that he shot the victims and kicked the female victim

8

(TT.9/23/09 pp.82-83, 92). After the recess, Juror 715 testified that during the break she encountered Hawkins outside the courthouse and that Hawkins said "he told me everything he did in the SHU. He told me it all" (TT. 9/23/09 p.103, 105) but she assured everyone that contact would not affect her impartiality (TT. 9/23/09 p.105).

Following this disclosure, the trial court found that the contact had not tainted the jury and in the exercise of her discretion denied a mistrial. Matters of credibility determinations rest with the fact finder, Marshall v. Lonberger, 459 U.S. 422 (1983). Those findings are entitled to a presumption of correctness here, 28 U.S.C. 2254(e)(1), and can only be overturned where the decision was unreasonable. Miller-El v. Cockrell, 537 U.S. 322 (2003). Although the contact was highly inappropriate there is no showing made here that a basis exists to disturb the conclusion of the trial court that it did not engender any prejudice. For this reason, the claim does not provide a basis for relief.

Petitioner next contends that the entire jury panel was tainted by the outburst of one of the prospective jurors during voir dire. The background to this claim is set forth in the Opinion of the Superior Court citing the opinion of the trial court:

> [o]n the third day of jury selection, a prospective juror (No.700) caused a minor commotion in the rear of the courtroom. Juror No. 700 complained to [the trial court's] law clerk about the wait and said he was going to leave. He further stated that he had already made up his mind, because "[Appellant is] fucking guilty anyway." The [trial court's] law clerk placed Juror No. 700 back in his seat and informed [the trial judge] of his comments. The Sheriff was directed to remove Juror No. 700 from the courtroom and informed all counsel of the disturbance.
>
> Immediately, thereafter, [the trial court] questioned the entire jury pool regarding the disruption. Only six jurors heard the exchange; those jurors were then sequestered from the rest of the pool. After the jurors had been interviewed, [Appellant], though his counsel, moved for a mistrial.[The trial court] denied the motion, finding that Juror No. 700's comments did not impact the ability of the jury pool to produce a panel of fair and impartial jurors.

50 A.3d at 218.

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury…" U.S. Const. Amend.VI. However, the process of jury selection rests within the ambit of trial judge's discretion. Ristanino v. Ross, 424 U.S. 589, 594-595 (1976) and "a trial court's finding of juror impartially may be overturned only for manifest error" Mu'Min v. Virginia, 500 U.S. 415 (1991). "Reviewing courts are properly resistant to second-

guessing the trial judge's estimation of a juror's impartiality…"Skilling v. United States, 130 S.Ct. 2896, 2918 (2010). In the present case, upon learning of the comments of Juror No. 700, the trial court in the presence of counsel inquired of the entire jury pool concerning the influence if any of the outburst and concluded that an impartial panel could be seated. No obvious error is demonstrated and for this reason, this allegation does not provide a basis for granting relief.

Petitioner next contends he is entitled to relief as a result of the prosecutor arguing to the jury that the defense could have called certain witnesses to testify but did not do so. Specifically, during his closing the prosecutor argued:

> The defendant says that – or the defense says we didn't call Vaughn Crews or Winter Clark. Well, the defense had equal access to these folks. They have the subpoena power. They have investigators, they can do what they want to do…(TT. 9/29/09 p.76).

First, we note that this argument was in response to defense counsel's closing in which he argued:

> They didn't call one witness to establish where he was. That's because he wasn't with Winter Clark. Then he says I was with Winter Clark. Really? Who else were you with? Keilone Prestone. Did they call him? No. Really, Tecko, who else were you with? Vaughn Crews. Did they call Vaughn Crews to establish where Tartt actually was No. *Why not?* (TT. 9/29/09 p.5)(emphasis added).

In addition, following this argument the trial court instructed the jury:

> I want to caution you again, which way back when we started, I told you that every defendant comes into the courtroom presumed innocent, every one, until such time, if ever, the jury decides unanimously that the Commonwealth has proven its case on each and every element beyond a reasonable doubt.
>
> I also told you the defendant does not have to do anything. They can just sit in their – and listen to the government – in their chair and listen to the government's evidence.
>
> The defendant in his defense did not have to bring in anyone to the courtroom or any evidence to the courtroom. That includes the fact that maybe there might be some other witness or some other witness or some other evidence that was available, but is not upon the defendant to go out and do tests because they do not have to do anything.
>
> I realize that [the prosecutor] was trying to respond to something [defense counsel] told you in his closing, but I wanted to caution you about that and remind you that the defense does not have to bring anybody in here. (TT. 9/2909 pp.95-96).

Thus, the prosecution's closing was a response to the petitioner's closing in which he argued that the prosecution failed to call certain witnesses. In response, the Commonwealth merely indicated that the witnesses were equally available to the defense and in no way shifted the burden of proof and additionally, the trial court promptly instructed the jury that the defense was under no obligation to call any witnesses. Thus, there was nothing improper about the prosecution's argument. See: <u>Beneshunas v. Klem</u>, 2005 WL 1532441 (C.A.3(Pa)) (unpublished) Becker, J. concurring at **8 ("I agree with judge Van Antwerpen that the defense strategy invited comment and rebuttal by the prosecution") cert. denied 546 U.S. 1019 (2005).

Petitioner's next argument is that the day after the verdict, one of the juror's contacted defense counsel and related that he had had his daughter conduct independent research into the various degrees of murder and that the jurors prevented him from requesting further instructions from the court. Under Pa.R.E. 606(b), "a juror is incompetent to testify as to what occurred during deliberations." In a similar manner, F.R. Evid. 606(b) also precludes a juror from impeaching a verdict. See: <u>McDonald v. Pless</u>, 238 U.S. 264 (1914); <u>United States v. Lakhani</u>, 480 F.3d 171 (3d Cir. 2007). Because no valid exception to imposing this rule has been demonstrated, the claim does not provide a basis for relief.

Finally, petitioner argues that the cumulative effect of the alleged prejudice denied him a fair trial. As discussed above, the trial was not infected with constitutionally defective errors and therefore there was no cumulative effect, and this claim likewise does not provide a basis for relief here.

Because there is no demonstration that the petitioner's conviction was secured in any manner contrary to federal law as determined by the Supreme Court of the United States nor involved any unreasonable application of that law, the petitioner is not entitled to relief here. Accordingly, it is recommended that the petition of Gerald Szakal for a writ of habeas corpus be dismissed, and because reasonable jurists could not conclude that a basis for appeal exists, that a certificate of appealability be denied.

Litigants who seek to challenge this Report and Recommendation must seek review by the district judge by filing objections within fourteen (14) days of this date. Failure to file timely objections will waive the right to appeal.

Filed: November 5, 2013

Respectfully submitted,
s/ Robert C. Mitchell
United States Magistrate Judge